IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY G. MOORE,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| v. | : | No. 14-4666 |
| | : | |
| **PLAINS ALL AMERICAN GP, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                                    September 17, 2015

## MEMORANDUM OPINION

This is an employment discrimination lawsuit between Plaintiff, Anthony Moore, and his former employer, Defendant, Plains All American GP, LLC. Plaintiff asserts claims for race discrimination, religious discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

Before me is Plaintiff's motion to compel certain emails withheld by Defendant pursuant to the work product doctrine.[1] Following an in camera review, and for the reasons that follow, I find that, with the exception of one sentence, the emails in question are not work product and must be produced to Plaintiff.

---

[1] Plaintiff's motion originally sought the production of certain emails dated January 15, 2014, January 20, 2014 and January 29, 2014, all of which were withheld by Defendant on work product grounds. Following an ex parte telephone conference with defense counsel (held with Plaintiff's counsel's consent), Plaintiff's motion was granted in part by agreement, and Defendant produced all previously-withheld emails dated January 15, 2014 and January 29, 2014. (See Doc. No. 40.) Such production did not waive Defendant's assertion of the work product doctrine as to the January 20, 2014 email chain. (Id.) Therefore, this Memorandum Opinion only addresses whether the January 20, 2014 emails may be withheld under the work product doctrine.

I.     **FACTUAL AND PROCEDURAL HISTORY**[2]

In April 2010, Plaintiff began his employment as a terminal operator with Defendant, a corporation in the business of transporting, storing and marketing crude oil and natural gas liquids. Defendant maintains a company-wide policy requiring the use of respirators for certain employees who may be exposed to toxic fumes. Plaintiff alleges that terminal operators at the Philadelphia terminal, the site where he was assigned, were only required to wear respirators during annual "fit tests." (Am. Compl. ¶¶ 4, 7-10.)

Plaintiff asserts that his Muslim faith requires him to grow facial hair, and that for several years he was permitted to participate in the annual respirator fit test, so long as his facial hair was kept trimmed. However, Plaintiff alleges that in 2013, Defendant changed its policy and required all employees to be clean shaven.[3] In response, Plaintiff allegedly requested that he be transferred to an office position or a new location that did not require him to be clean shaven. Plaintiff claims that his requests for accommodation were denied. (Id. at ¶¶ 11-14, 20-21, 34, 39-40.)

Defendant was initially notified that Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2014, and Defendant received a subsequent notification on January 14, 2014. On January 20, 2014, Plaintiff informed Defendant that he would participate in the next fit test, which was scheduled for February 3, 2014, but that his religious faith prevented him from shaving his facial hair. Plaintiff claims that,

---

[2] As the motion to compel relates only to Plaintiff's claim for religious discrimination, the fact history will be limited accordingly.

[3] Defendant indicates that the respirator program is required by the U.S. Occupational Health and Safety Administration ("OSHA") for all employees whose job responsibilities could expose them to atmospheric contamination. Employees are required by Defendant and OSHA to be clean shaven for fit tests to ensure a proper seal between the employee's face and the respirator mask. (Answer ¶ 8.)

on or about January 29, 2014, his employment was terminated due to his religious objection. (Id. at ¶¶ 28, 33-35, 40-41.)

Plaintiff's complaint was filed on August 7, 2014, and the parties have engaged in discovery. Among the materials Defendant has produced are two emails written by Defendants' management on January 20, 2014. The first email from Toni Graham, Human Resources Director for Defendant, to Regional Manager for Defendant, Shawn Roberts, states that Graham needs to "get a final from [Vice President of Operations, Phillip Smith,] that there will be no exceptions" to the respirator fit test and stating that if the policy "make[s] an exception for medical, they have to make an exception for religion." (Pl.'s Mot., Ex. 7.) Roberts then forwarded this email to other members of the management team, stating, "Hold up . . . and let Toni [Graham] run the trap she is stating below." (Id.)

The instant motion to compel seeks the production of two later emails, written on the same date, that Defendant has withheld on work product grounds. Defendant's privilege log reflects that the two emails were communications between Graham and Smith and contain mental impressions, conclusions, and opinions of party representatives prepared in connection with the defense of Plaintiff's EEOC charge. (Def.'s 2d Am. Privilege Log, p. 3.)

Both Graham and Smith were deposed and questioned about the withheld January 20, 2014 emails.[4] During her deposition, Graham described the withheld emails, indicating that she had essentially asked Smith, "What are we going to do about Mr. Moore?" Graham indicated that Smith had responded that Plaintiff would either need to take the fit test or move to another position that did not require fit testing. (Graham Dep., Pl.'s Mot., Ex. 2, pp. 49-51.)

---

[4] Although defense counsel allowed the witnesses to answer certain questions about the emails at deposition, the contents were not disclosed in their entirety. The portion of the emails that I find should be redacted as opinion work product was not described or disclosed during deposition.

When Smith was asked about the emails during his deposition, he first stated that a decision as to Plaintiff's request for accommodation was not communicated in the withheld emails. (Smith Dep., Pl.'s Mot., Ex. 3, pp. 9-10.) Later in the deposition and in reference to the withheld emails, Smith acknowledged making the decision "that there will be nobody put into a position within the company with H2S or toxic-type exposures that is not in the respiratory protection program." (Id. at pp. 17-18.) Smith also indicated that he had suggested that attorneys be engaged. However, neither Smith nor Graham ever spoke to Defendant's attorneys about Plaintiff's request for accommodation. (Graham Dep., p. 50; Smith Dep., pp. 6-7.)

Plaintiff largely challenges the work-product designation of the emails in question because they were created by Defendant's employees and were not directed to an attorney. Plaintiff also argues that the emails were created in the normal course of business, as opposed to being created for litigation purposes. Finally, Plaintiff asserts that, even if the emails constitute work product, he has demonstrated a substantial need for their disclosure, and cannot otherwise obtain the information without undue hardship.

Defendant responds that the plain language of Rule 26(b)(3) extends the work product doctrine to materials created by a party or its representative in anticipation of litigation, and does not require attorney involvement. Defendant further asserts that the materials were created in anticipation of litigation because Defendant had been notified about Plaintiff's filing with the EEOC, it had issued a litigation hold on November 19, 2013, and, as explained by Smith during his deposition, one email referenced obtaining the advice of counsel. Defendant also argues that Plaintiff has not demonstrated a substantial need for the information, as he has been provided with extensive discovery about the decisions made by its management team, particularly with regard to the request for accommodation to the respirator fit test. (See Def.'s Resp., Exs. C-D.)

4

Finally, Defendant points out that both Smith and Graham were deposed and answered questions about matters discussed in the withheld emails, which has negated any substantial need for their disclosure.

Defendant submitted the contested emails to the Court for an <u>in camera</u> review. In the event that disclosure of the emails was required, Defendant also suggested certain redactions to the January 20, 2014 emails to protect opinion work product, which is granted heightened protection under the Federal Rules of Civil Procedure.

For the reasons that follow, Plaintiff's motion to compel will be granted in part and denied in part.

## II.     STANDARD OF REVIEW

"The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3)." <u>In re Cendant Corp. Sec. Litig.</u>, 343 F.3d 658, 661 (3d Cir. 2003). Rule 26(b)(3) states as follows:

(A) Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

  (i)     they are otherwise discoverable under Rule 26(b)(1); and
  (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Therefore, even if the withholding party demonstrates that the work product doctrine would otherwise apply because the materials at issue were prepared in anticipation of litigation, that privilege may be overcome by a showing that the requesting party has a substantial need and cannot otherwise obtain the information without undue hardship. <u>In re Cendant Corp. Sec. Litig.</u>, 343 F.3d at 663.

Furthermore, pursuant to Federal Rule of Civil Procedure 26(b)(3)(B), "'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.'" Id. (quoting Fed. R. Civ. P. 26(b)(3)(B); In re Ford Motor Co., 110 F.3d 954, 962 n.7 (3d Cir. 1997)).

### III.   LEGAL ANALYSIS

The work product doctrine has historically aimed to protect the work and mental processes of attorneys because "[i]n performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495 (1947). The United States Court of Appeals for the Third Circuit has held that "the work product doctrine [also] extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation." In re Cendant Corp. Sec. Litig., 343 F.3d at 665-66. The Third Circuit has not yet addressed the issue presently before me—whether materials created by a party's representative, outside of the direction of counsel, may be withheld on work product grounds. Some recent district court opinions and the plain language of Rule 26(b)(3) provide guidance.

As previously recited, the plain language of the Federal Rules of Civil Procedure anticipate that materials created "by or for another party or its representative" may be protected by the work product doctrine, so long as they were created in anticipation of litigation. The rule does not explicitly require the participation of an attorney in the creation of the materials. Other district courts guided by the plain language of Rule 26(b)(3) have reached the same conclusion. See Moore v. DAN Holdings, Inc., 2013 WL 1833557, at *8 (M.D.N.C. Apr. 30, 2013) (finding

work product doctrine protected internal investigation by employer in a discrimination case where there was no attorney involvement); Keating v. McCahill, 2012 WL 2527024, at *4-5 (E.D. Pa. July 2, 2012) (finding work product doctrine applied to materials created by corporate defendant's management in anticipation of litigation, despite attorney noninvolvement); Sperling v. City of Kennesaw Dept., 202 F.R.D. 325, 327 (N.D. Ga. 2001) (relying upon "by a party" language in Rule 26(b)(3) to find work product privilege extended to materials prepared by the plaintiff in anticipation of litigation); ECDC Envtl. v. N.Y. Marine & Gen. Ins. Co., 1998 WL 614478, at *15 (S.D.N.Y. June 4, 1998) (same). I am persuaded by this precedent and agree that the plain language of Rule 26(b)(3) indicates that the work product doctrine may extend to documents prepared in anticipation of litigation by a party or its representative.

I next consider whether the emails in question were created in anticipation of litigation. "A party claiming work product immunity bears the burden" of demonstrating that the materials in question were prepared in anticipation of litigation. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000). "Work product prepared in the ordinary course of business is not immune from discovery." Id. "The question whether a document was created in anticipation of litigation is often a difficult factual matter." United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). The test for making this determination is as follows: "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. (quoting In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)). "[T]he primary motivating purpose behind the creation of the document" must be "to aid in possible future litigation." Id. (quoting United States v. El Paso Co., 682 F.2d 530, 542-43 (5th Cir. 1982)).

The emails in question were created following Defendant's receipt of Plaintiff's notice of charge of discrimination from the EEOC, and after a litigation hold had been put into effect. Defendant cites to cases where notice of an EEOC charge weighed in favor of a finding that certain materials were created in anticipation of litigation. While this is true, the cases cited differ somewhat from the facts before me. The materials claimed to be protected by the work product doctrine in the cases cited by Defendant were materials created during an investigation into the merits of the plaintiffs' EEOC charges. See, e.g., Lafate v. Vanguard Grp., Inc., 2014 WL 5023406, at *6 (E.D. Pa. Oct. 7, 2014) ("documents prepared and obtained . . . during [the defendant's] investigation into Plaintiff's EEOC charge were prepared and obtained because of the prospect of litigation"); Moore, 2013 WL 1833557, at *7 ("an investigation following an EEOC charge constitutes activity in anticipation of litigation") (emphasis added). Therefore, although it may weigh in Defendant's favor, the mere fact that Defendant had received notice of an EEOC charge is not dispositive.

My in camera review of the disputed emails does not fully convince me that they were created with the primary aim of aiding future litigation, as opposed to being created in the ordinary course of business. While Defendant was aware of Plaintiff's EEOC charge at the time the emails were written, the emails largely discuss Plaintiff's request for an accommodation for his religious beliefs. This email exchange would have occurred regardless of whether Plaintiff had filed his complaint, and is part of an employer's duty in the regular course of business. See Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 79 (1977) (recognizing employer's duty to provide a reasonable accommodation for its employee's religious needs, absent undue hardship); see also Wash. Metro. Area Transit Auth. v. One Parcel of Land in Prince George's Cnty., Md., 342 F. Supp. 2d 378, 381 (D. Md. 2004) ("A process designed to avoid litigation can hardly be

said to be one in anticipation of litigation"). Indeed, the contents of these emails do not differ substantially from emails already produced to Plaintiff. While the emails do reference having a discussion with counsel at some point in the future, both Graham and Smith indicated during deposition that they never spoke to counsel about Plaintiff's request for accommodation.

I do find, however, that one sentence in the email from Graham to Smith qualifies as opinion work product, since it presents "the mental impressions, conclusions, opinions, or legal theories of a party's . . . representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). "By their very nature," mental impressions, thoughts, and conclusions regarding litigation "are prepared in anticipation of litigation, and consequently they are protected from discovery as opinion work product." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 139 F.R.D. 609, 614 (E.D. Pa. 1991). As this type of opinion work product is "generally afforded near absolute protection from discovery," In re Cendant Corp. Sec. Litig., 343 F.3d at 663, Defendant may redact the second-to-last sentence in Graham's email to Smith prior to producing the January 20, 2014 email chain.[5] See Vanguard Sav. & Loan Ass'n v. Banks, 1995 WL 555871, at *4 (E.D. Pa. Sept. 18, 1995) (ordering redaction of opinion work product from otherwise discoverable materials); Rhone-Poulenc, 139 F.R.D. at 614 (acknowledging that opinion work product may be redacted from an otherwise discoverable document).

---

[5] I recognize that Defendant's proposed redactions were more extensive than I have ordered here. I have scaled back the redactions because I disagree with some of Defendant's characterizations of sentences containing opinion work product.

Because I find that the majority of the January 20, 2014 email chain is not work product and should be produced, I need not consider Plaintiff's remaining arguments regarding substantial need, undue hardship or Federal Rule of Evidence 612. Further, the redacted portion, as opinion work product, would not be produced even if Plaintiff were successful in showing substantial need.

### IV.     CONCLUSION

For the reasons recited above, I find that, under Federal Rule of Civil Procedure 26(b)(3), materials produced by or for a party in anticipation of litigation may constitute work product despite the fact that the materials were not created at the direction of an attorney.  However, the emails withheld in this case do not, as a whole, constitute work product that may be withheld because they were not created in anticipation of litigation.  One sentence in these emails may be redacted as containing a party representative's mental impressions regarding litigation.  An appropriate Order follows.